***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall. Both appealing parties have not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before Deputy Commissioner Hall as:
 STIPULATIONS
1. All parties are properly before the Commission and subject to the terms of the Workers' Compensation Act and the Commission has jurisdiction over the parties and subject matter.
2. Plaintiff was an employee of defendant and Crawford Company is the Workers' Compensation carrier.
3. Plaintiff alleges an injury was sustained on January 8, 2001.
4. The parties stipulated to admit the personnel and medical records of plaintiff into the evidence of record at the hearing before the Deputy Commissioner.
5. The issues for determination by the Commission are: whether plaintiff sustained a compensable injury while employed by defendant; what benefits is plaintiff entitled to; whether plaintiff provided proper notice of any injury or condition to defendant as per the North Carolina Workers' Compensation Act.
 ***********
Based upon all the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 43 years old and had a ninth grade education. Plaintiff's wife testified that he does not read or write very well and she fills out most of his paperwork for his signature. Plaintiff worked for defendant as a card tender on January 8, 2001.
2. The card tender position required both running a large machine and moving the cotton being produced across the floor in three to four-foot-high cans weighing approximately 75 pounds. To do this plaintiff was required to pull three or four cans at a time approximately 75 to 100 yards.
3. On January 8, 2001, plaintiff was pulling several large cans of cotton across the floor when he felt a pop in his lower back and pain down his right leg. Plaintiff testified that he had prior problems with his hip, but that he'd never had back pain before or the pain go down his leg like he did after this incident.
4. The cotton dust from the machines producing the cotton fiber builds up on the floor during the shift making plaintiff's job of pulling the cans more difficult near the end of his shift. On January 8, 2001, plaintiff was injured near the end of his shift.
5. Plaintiff testified that he went to the smoking area and informed his supervisor, James Barnes, of his injury. Mr. Barnes could not recall the conversation in the smoking area. He did say plaintiff reported an injury, but that plaintiff did not specify that it was an on-the-job injury though it was reported to him at work. Plaintiff also informed Betty Keel of difficulty walking and an inability to do his job and requested other work. There is no evidence that Mr. Barnes or Ms. Keel ever made any inquiry as to how the injury occurred.
6. Plaintiff immediately informed Kenny Arrington, a co-employee, of the incident in question. Mr. Arrington testified that plaintiff told him he was having low back and leg pain in the break room at approximately 5:00 a.m.
7. Plaintiff's wife testified that plaintiff came home in January 2001 complaining of back pain and that he had trouble getting in the house. She testified that he usually comes up the stairs, but that he was limping up their sons' wheelchair ramp. She testified that he did not usually limp when he walked.
8. Plaintiff presented to the Scotland Neck Family Medical Center on January 9, 2001 and was seen by Jay Oswald, PA-C, for right hip pain, upper leg pain, and lower leg pain. Mr. Oswald referred plaintiff to Carolina Regional Orthopaedics.
9. Plaintiff was seen on January 16, 2001 by Dr. Robert Martin for an evaluation of right low back pain and right hip pain. Dr. Martin noted that plaintiff's pain extended from the low back into the right hip and the right leg down through the mid thigh. Dr. Martin reviewed an MRI of plaintiff's right hip and pelvis to examine for avascular necrosis and that scan was negative.
10. Dr. Martin treated plaintiff for hip pain, not back pain. On May 1, 2001, Dr. Martin noted plaintiff did receive a Lidocaine injection and the pain improved for a few weeks, however, it did return. Dr. Martin testified that he has not seen plaintiff since May 1, 2001.
11. Plaintiff returned to his primary physician and was referred to Dr. Martinez. Plaintiff testified that he went to see another doctor because Dr. Martin was only concerned with treating his hip pain and did nothing for his low back pain.
12. Dr. Martinez first examined plaintiff on May 14, 2001 for evaluation of low back pain with radiation to both hips and pain down the right leg to the knee. Plaintiff presented to Dr. Martinez with difficulty walking and standing. Plaintiff was noted to have what appeared to be a neurogenic intermittent claudication that was worse after walking a short distance, requiring plaintiff to stop and bend over or sit down to get relief from the pain. Plaintiff informed Dr. Martinez that he had an accident on January 6, 2001.
13. Dr. Martinez discovered, on neurological examination, that plaintiff had an absent right kneecap response and a positive femoral stretch maneuver on the right side. Dr. Martinez found that plaintiff had no difficulty with external rotation of the hip. The pathology was in the spine and showed a herniated disc at L3-L4 or L4-L5. Dr. Martinez ordered a myelogram, which showed a bulging of the L4-L5 disk space aggravated by lumbar canal stenosis.
14. Dr. Martinez testified that plaintiff has a congenitally narrow spine and that the disc protrusion at the L4-L5 level resulted in a compromise of the nerve roots at that level. Dr. Martinez testified that the L4-L5 nerve root compromise correlated to the pain radiating down plaintiff's legs and an inability to ambulate.
15. Dr. Martinez performed surgery on June 18, 2001 consisting of a decompressive lumbar laminectomy, foraminotomy, and medial facetectomy at the L3-L4 and L4-L5 areas.
16. Dr. Martinez testified to reasonable degree of medical certainty that the L4-L5 disc bulge and subsequent required surgery was created by the on-the-job injury of January 8, 2001. As to any forms indicating otherwise, Dr. Martinez testified that "the Workmens' Compensation forms are filled by the person on the clerical staff based on the record. And somebody had said that was not — was not related to the employment, which was not my opinion. I mean, that was something they made on their own."
17. Dr. Martinez stated that after discussing plaintiff's vocational abilities, he believed plaintiff was unable to return to the same type of physical labor that he had been doing as a card tender. Dr. Martinez informed plaintiff that some low back pain would continue and that he would never be completely pain free.
18. On August 19, 2002, Dr. Martinez determined plaintiff had reached maximum medical improvement from the lumbar canal stenosis and plaintiff was discharged from his care. Dr. Martinez testified that he had not been asked to provide a rating previously, but based on the extensive surgery, limitation on flexion and extension, he would rate plaintiff's permanent partial disability at 20 % to plaintiff's back. Dr. Martinez indicated that plaintiff would have permanent restrictions of limited lifting and pulling with a weight restriction not to exceed 25 pounds.
19. Dr. Martinez testified that plaintiff could have continuously worked under those restrictions since his discharge. Plaintiff returned to work for two days at his old job, which required him to work outside the permanent restrictions of Dr. Martinez. Other than those two days, plaintiff has chosen not to return to work for any employer even though he has been released to return to work. Although plaintiff continues to complain of pain, Dr. Martinez told him that he would always have some pain, but that he could work within his permanent restrictions. Plaintiff has not made a good faith effort to return to any type of work within his restrictions. Plaintiff's wife even testified that plaintiff had gotten "lazy" on her.
20. Plaintiff has failed to show that he continues to be disabled and has suffered a diminished capacity to earn wages.
21. Based on the Form 22 submitted in this matter, plaintiff had an average weekly wage of $354.34, yielding a compensation rate of $236.24.
22. The Full Commission finds defendant has not shown how they have been prejudiced by plaintiff's alleged delay in reporting the injury. Plaintiff informed his supervisor, James Barnes, immediately. The testimony of James Barnes and Betty Keel is given little weight as they had the opportunity to inquire as to the source of plaintiff's pain, but made no effort to do so.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 8, 2001, plaintiff sustained a specific traumatic event arising out of and in the course of his employment with defendant resulting in a low back injury. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to compensation for temporary total disability benefits at his compensation rate of $236.24 per week for the period January 8, 2001 through August 19, 2002. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendant pay for all medical expenses incurred or to be incurred as a result of his compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. § 97-25.
4. Plaintiff has failed to meet his burden of showing a continuing disability or diminished wage-earning capacity within the meaning of the Act. N.C. Gen. Stat. § 97-2(9), Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982), Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Plaintiff has reached maximum medical improvement from his compensable injury of January 8, 2001 and is entitled to payment for his 20 % permanent partial impairment rating. N.C. Gen. Stat. § 97-31.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay compensation to plaintiff for temporary total disability from January 8, 2001 through August 19, 2002. This amount shall be paid in a lump sum subject to an attorney's fee hereinafter approved.
2. Defendant shall pay for all medical expenses incurred by plaintiff as a result of his compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability.
3. Defendant shall pay plaintiff for his 20 % permanent partial disability. This amount shall be paid in a lump sum subject to an attorney's fee hereinafter approved.
4. An attorney's fee in the amount of 25 % of the compensation awarded to plaintiff is approved and shall be deducted from the amounts due plaintiff and paid directly to plaintiff's counsel.
5. Defendant shall pay the costs.
This ___ day of August 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/kjd